1
2
3
4
5              **UNITED STATES DISTRICT COURT**
6                    **DISTRICT OF NEVADA**
7
8    MICHAEL DUANE WILSON,
9           Petitioner,                              3:14-cv-00071-RCJ-VPC
10   vs.
                                            **ORDER**
11   ROBERT LeGRAND, *et al.*,
12          Respondents.
13   _____/
14

15   Introduction

16          This action is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by

17   Michael Duane Wilson, a Nevada prisoner.  The case is before the court with respect to the merits of

18   the claims remaining in Wilson's first amended petition after the resolution of respondents' motion

19   to dismiss.  The court will deny Wilson's petition.

20   Background

21          Wilson was convicted on October 1, 2009, following a jury trial in Nevada's Eighth Judicial

22   District Court, in Clark County, of eight counts of lewdness with a child under the age of fourteen,

23   and one count of unlawful contact with a child under the age of sixteen.  *See* Judgment of

24   Conviction, Exhibit 26 (ECF No. 18-4) (The exhibits referred to in this order were filed by Wilson,

25   and are located in the record at ECF Nos. 15, 16, 17, 18 and 19.).  He was sentenced to eight

26

1    concurrent terms of ten years to life in prison for the lewdness convictions, and, for the conviction of

2    unlawful contact with a child, he was sentenced to a concurrent one-year term.  *See id*.

3           The Nevada Supreme Court affirmed the judgment of conviction on December 9, 2011.

4    *See id*.   The court denied Wilson's petition for rehearing on May 9, 2012.  *See* Order Denying

5    Rehearing, Exhibit 37 (ECF No. 19-1).

6           On July 16, 2012, Wilson filed a post-conviction petition for writ of habeas corpus in the

7    state district court.  *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 39 (ECF No.

8    19-3).  The state district court denied the petition, in a written order, on February 4, 2013.  *See*

9    Findings of Fact, Conclusions of Law and Order, Exhibit 44 (ECF No. 19-8).  Wilson appealed, and

10   the Nevada Supreme Court affirmed on January 15, 2014.  *See* Order of Affirmance, Exhibit 48

11   (ECF No. 19-12).

12          This court received Wilson's federal habeas petition, initiating this action *pro se*, on

13   February 4, 2014 (ECF No. 4).  The court granted Wilson's motion for appointment of counsel, and

14   appointed counsel to represent him.  *See* Order entered February 18, 2014 (ECF No. 3).  With

15   counsel, Wilson filed a first amended habeas petition (ECF No. 14) on January 29, 2015.  Wilson's

16   first amended petition -- the operative petition in the case -- asserts the following claims:

17          1a.    Wilson's federal constitutional rights were violated because "the State of
                  Nevada produced insufficient evidence at trial to support a conviction for
18                lewdness [with] a minor and unlawful contact with a child."  First Amended
                  Petition (ECF No. 14), p. 12.
19
            1b.    "The trial court erroneously denied Wilson's pretrial motions challenging
20                jurisdiction and requesting severance of the counts based on insufficiency of
                  the evidence."  *Id*. at 16.
21
            1c.    "The trial court applied an incorrect standard of review and erroneously denied
22                Wilson's motion for judgment of acquittal or new trial."  *Id*. at 18.

23          2.     "Wilson's sentence violated the Double Jeopardy Clause of the Fifth
                  Amendment and the presumption against the pyramiding of punishment for a
24                single transaction and occurrence."  *Id*. at 20.

25          3.     "Wilson's constitutional rights to due process and a fair trial under the Fifth,
                  Sixth and Fourteenth Amendments were violated when A.S. and C.S. were
26                allowed to testify."  *Id*. at 23.

2

4.     Wilson's federal constitutional rights were violated because of prosecutorial misconduct during closing arguments. *Id*. at 25.

5a.    Trial counsel was ineffective, in violation of Wilson's federal constitutional rights, with respect to her cross-examination of C.S. *Id*. at 29.

5b.    Trial counsel was ineffective, in violation of Wilson's federal constitutional rights, because she "failed to seek dismissal of all charges because Wilson did not "willfully and lewdly commit any lewd or lascivious act" pursuant to Nevada Revised Statute § 201.230." *Id*. at 30.

5c.    Trial counsel was ineffective, in violation of Wilson's federal constitutional rights, because she "failed to object to multiple instances of prosecutorial misconduct during closing arguments." *Id*. at 30.

6a.    Appellate counsel was ineffective, in violation of Wilson's federal constitutional rights, because he "failed to include in Wilson's direct appeal the fact that the State of Nevada did not prove [with respect to] each element of the crime of lewdness with a minor that Wilson "willfully and lewdly committed a lewd or lascivious act." *Id*. at 31.

6b.    Appellate counsel was ineffective, in violation of Wilson's federal constitutional rights, with respect to his presentation of Wilson's petition for rehearing. *Id*. at 32-33.

On April 1, 2015, respondents filed a motion to dismiss (ECF No. 21), arguing that Claims 1b, 1c and 3, and part of Claim 6b, were unexhausted in state court, and should be dismissed, and that Claims 1b, 1c, 2, 3, 6a and 6b failed to state claims cognizable in this federal habeas corpus action. The court ruled on the motion to dismiss on November 9, 2015, granting it in part and denying it in part; the court found Claims 1b, 1c and 3 to be unexhausted in state court, and granted Wilson an opportunity to make an election to either abandon those claims or move for a stay of this action to allow him to exhaust those claims in state court. *See* Order entered November 9, 2015 (ECF No. 25). Wilson filed a motion for reconsideration (ECF No. 26), seeking reconsideration of the court's November 9, 2015, order. The court denied the motion for reconsideration. *See* Order entered April 12, 2016 (ECF No. 27).

Wilson filed a declaration, abandoning unexhausted Claims 1b, 1c and 3. *See* Petitioner's Declaration of Abandonment (ECF No. 29); *see also* Notice to Court of Intent to Abandon Claims (ECF No. 28).

1    Respondents then filed an answer (ECF No 31) on August 4, 2016, responding to the claims

2    remaining in Wilson's first amended petition.  Wilson filed a reply on November 30, 2016 (ECF

3    No. 36).

4    Discussion

5        Standard of Review

6        28 U.S.C. § 2254(d) sets forth the primary standard of review applicable in this case under

7    the Antiterrorism and Effective Death Penalty Act (AEDPA):

8            An application for a writ of habeas corpus on behalf of a person in custody
        pursuant to the judgment of a State court shall not be granted with respect to any
9        claim that was adjudicated on the merits in State court proceedings unless the
        adjudication of the claim --
10
            (1)  resulted in a decision that was contrary to, or involved an unreasonable
11        application of, clearly established Federal law, as determined by the Supreme Court
        of the United States; or
12
            (2)  resulted in a decision that was based on an unreasonable determination of
13        the facts in light of the evidence presented in the State court proceeding.

14    28 U.S.C. § 2254(d).

15        A state court decision is contrary to clearly established Supreme Court precedent, within the

16    meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set

17    forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

18    indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

19    different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)

20    (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694

21    (2002)).

22        A state court decision is an unreasonable application of clearly established Supreme Court

23    precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

24    governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

25    principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S.

26    at 413).  The "unreasonable application" clause requires the state court decision to be more than

4

1    incorrect or erroneous; the state court's application of clearly established law must be objectively

2    unreasonable.  *Id*. (quoting *Williams*, 529 U.S. at 409).

3         The Supreme Court has instructed that "[a] state court's determination that a claim lacks

4    merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

5    of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011) (citing

6    *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has stated "that even a

7    strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*.

8    (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, __ U.S. __, 131 S.Ct. 1388, 1398

9    (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for

10   evaluating state-court rulings, which demands that state-court decisions be given the benefit of the

11   doubt" (internal quotation marks and citations omitted)).

12        Claim 1a

13        In Claim 1a, Wilson claims that his federal constitutional rights were violated because

14   "the State of Nevada produced insufficient evidence at trial to support a conviction for lewdness

15   [with] a minor and unlawful contact with a child."  First Amended Petition (ECF No. 14), p. 12.

16        Wilson asserted this claim on his direct appeal (*see* Appellant's Opening Brief, Exhibit 29,

17   pp. 10-18 (ECF No. 18-7, pp. 21-29)), and the Nevada Supreme Court ruled as follows:

18             Wilson argues that the State presented insufficient evidence because it failed
          to prove that his acts with the children were sexual, and nonsexual acts cannot be
19        considered lewd or lascivious for purposes of NRS 201.230.  Although we agree that
          the statute requires a lewd or lascivious act and that a lewd act must be accompanied
20        by the necessary sexual intent, we concluded that a rational juror could find beyond a
          reasonable doubt that Wilson's conduct was lewd or lascivious, and he acted with the
21        necessary sexual intent.

22             When reviewing a challenge to the sufficiency of the evidence, we review the
          evidence in the light most favorable to the prosecution and determine whether any
23        rational juror could have found the essential elements of the crime beyond a
          reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *McNair v. State*,
24        108 Nev. 53, 56, 825 P.2d 571, 573 (1992).  It is for the jury to assess the witnesses'
          credibility and determine the weight to give their testimony, and the jury's verdict will
25        not be disturbed on appeal where substantial evidence supports the verdict.  *McNair*,
          108 Nev. at 56, 825 P.2d at 573; *Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20
26        (1981).

1                                    *   *   *

2          NRS 201.230(1) defines the crime of lewdness with a minor under

3   14 years:

4          A person who willfully and lewdly commits *any lewd or lascivious
           act*, other than acts constituting the crime of sexual assault, upon or
           with the body, or any part or member thereof, of a child under the age
5          of 14 years, with the intent of arousing, appealing to, or gratifying the
           lust or passions or sexual desires of that person or of that child, is
6          guilty of lewdness with a child.

7   (Emphasis added.)  The material elements of the crime of lewdness with a minor are
    (1) a lewd or lascivious act, (2) upon or with the child's body or any part of the
8   child's body, (3) the child's age, and (4) the intent to arouse, appeal to, or gratify, the
    lust or passion of the accused or the child.  NRS 201.230(1); *Gay v. Sheriff*, 89 Nev.
9   118, 119 n.1, 508 P.2d 1, 2 n.1 (1973); *see also* 43 C.J.S. *Infants* § 120 (2004).

10                                   *   *   *

11         We conclude that the State presented sufficient evidence that Wilson's
    conduct was lewd or lascivious, and was sexually motivated as required by NRS
12  201.230(1).  The charges against Wilson involved two young girls who are sisters,
    A.S. and C.S.  Wilson lived next door to the girls with his girlfriend Tonja, her
13  teenage daughter J.F., and other family members.  From February 2007 to early 2008,
    J.F. and Tonja babysat A.S. and C.S. while their mother worked the night shift as a
14  cabdriver.  Occasionally, the two girls would sleep at Wilson's home while their
    mother worked.  A.S. and C.S. were 8 and 10 years old, respectively, when this
15  childcare arrangement began.

16         During that time, Wilson at various times touched A.S.'s genitals, breasts,
    buttocks, and the "roof" of her buttocks.  Wilson also showed her pornography on his
17  cell phone and on the walls of his garage, though A.S. explained that he did not touch
    her during those incidents.  Similarly, Wilson touched C.S.'s buttocks, clavicle area,
18  sides of her breasts, and thighs.  He also touched her on her shoulders, lower back,
    and sides of her body while showing her pornography.  Additionally, he told both
19  girls that he would hurt their mother if they told anyone about the touchings.  Based
    on this evidence, we conclude that a rational juror could find beyond a reasonable
20  doubt that Wilson committed eight counts of lewdness with a minor under the age of
    14 years.

21

22  Order of Affirmance, Exhibit 33, pp. 2-5 (ECF No. 18-11, pp. 3-6) (footnote omitted).

23         A federal habeas petitioner who alleges that the evidence at trial was insufficient to support

24  his conviction states a constitutional claim that, if proven, entitles him to federal habeas relief.  *See*

25  *Jackson v. Virginia*, 443 U.S. 307, 321, 324 (1979).  The Supreme Court has emphasized, however,

26

                                          6

1    that "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two

2    layers of judicial deference." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (per curiam).

3         A federal habeas court reviewing a state court conviction does not simply determine whether

4    the evidence established guilt beyond a reasonable doubt. *See Payne v. Borg*, 982 F.2d 335, 338

5    (9th Cir. 1993); *see also Coleman*, 132 S. Ct. at 2065. Rather, the question is "whether, 'after

6    viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

7    have found the essential elements of the crime beyond a reasonable doubt.'" *Payne*, 982 F.2d at 338

8    (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). Only if no rational trier of fact could have

9    found proof of guilt beyond a reasonable doubt is habeas relief warranted. *Jackson*, 443 U.S. at 324;

10   *Payne*, 982 F.2d at 338. In applying this standard, a jury's credibility determinations are entitled to

11   near-total deference. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950,

12   957 (9th Cir. 2004).

13        28 U.S.C. § 2254(d) imposes a second layer of deference: the state court's decision denying

14   a sufficiency of the evidence claim may not be overturned on federal habeas unless the decision was

15   "objectively unreasonable." *See Williams*, 529 U.S. at 409-10; *Parker v. Matthews*, 132 S.Ct. 2148,

16   2152 (2012) (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam)).

17        Under NRS 201.230, the crime of lewdness with a child under the age of fourteen has the

18   following elements: (1) a lewd or lascivious act; (2) upon or with the child's body or any part of the

19   child's body; (3) the child being under the age of fourteen; and (4) intent to arouse, appeal to, or

20   gratify, the lust or passion of the accused or the child. *See* Order of Affirmance, Exhibit 33, pp. 3-5

21   (ECF No 18-11, pp. 3-6). The Nevada Supreme Court's construction of this Nevada law is beyond

22   the scope of this federal habeas action. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (federal

23   habeas court cannot reexamine a state court's interpretation of state law).

24        With respect to the crime of unlawful contact with a child, NRS 207.260(1) provides:

25        A person who, without lawful authority, willfully and maliciously engages in a course
          of conduct with a child who is under 16 years of age and who is at least 5 years
26        younger than the person which would cause a reasonable child of like age to feel
          terrorized, frightened, intimidated or harassed, and which actually causes the child to

1  feel terrorized, frightened, intimidated or harassed, commits the crime of unlawful
2  contact with a child.

3  NRS 207.260(1).

4      There was ample evidence presented at trial to support Wilson's convictions. Most

5  importantly, CS and AS testified that Wilson touched them -- CS, then ten to eleven years old, and

6  AS, then eight to nine years old -- in a manner the jury could reasonably have found to be lewd,

7  including as follows:

8      -    CS on her breasts (Count 1) (Testimony of CS, Trial Transcript, August 4,
2009, Exhibit 17, pp. 128-31 (ECF No. 17, pp. 129-32));

9
10      -    CS on her shoulders (Count 2) (*id*. at 125, 148-51 (ECF No. 17, pp. 126, 149-52));

11      -    CS on her waist, sides, and sides of her breasts (Count 3) (*id*. at 126-27, 130-31, 151-52 (ECF No. 17, pp. 127-28, 131-32, 152-53));

12
13      -    CS on her upper thighs (Count 4) (*id*. at 129-30, 142, 145-47 (ECF No. 17, pp. 130-31, 143, 146-48));

14      -    CS on her buttocks, with his foot (Count 6) (*id*. at 127, 144-45, 152-53 (ECF No. 17, pp. 128, 145-46, 153-54));

15
16      -    AS on her chest (Count 8) (Testimony of AS, Trial Transcript, August 4, 2009, Exhibit 17, pp. 59-60, 70, 73-76 (ECF No. 17, pp. 60-61, 71, 74-77) (AS referred to her breasts as her "chi chis," *see id*. at 56 (ECF No. 17, p. 57));

17
18      -    AS on her buttocks (Count 9) (*id*. at 60, 76-79 (ECF No. 17, pp. 61, 77-80) (AS referred to her buttocks as her "buns," *see id*. at 56 (ECF No. 17, p. 57));

19
20      -    AS in the genital area (Count 11) (*id*. at 57-59, 79-82, 85, 89 (ECF No. 17, pp. 58-60, 80-83, 86, 90) (AS referred to her vaginal region as her "private part," *see id*. at 55-56 (ECF No. 17, pp. 56-57)).

21      CS and AS testified that they felt uncomfortable when Wilson touched them.  For example,

22  AS testified as follows regarding how she felt when Wilson touched her genital area:

23      Q.    ... Okay.  How did it feel when his finger poked your private part?

24      A.    Well, it felt uncomfortable.  And, well, it just like shocked me and I
really don't remember.

25

26

Testimony of AS, Trial Transcript, August 4, 2009, Exhibit 17, p. 59 (ECF No. 17, p. 60); *see also*
*id.* at 80 (ECF No. 17, p. 81).  AS also testified that she felt "[r]eally uncomfortable" when Wilson
touched her breasts.  *Id.* at 60 (ECF No. 17, p. 61).  CS testified that when Wilson touch her near her
buttocks, she felt "scared."  Testimony of CS, Trial Transcript, August 4, 2009, Exhibit 17, p. 126
(ECF No. 17, p. 127); *see also id.* at 122, 125-30 (ECF No. 17, pp. 123, 126-31).  Ja'nae testified
that when Wilson would take CS and AS to a park, CS "really wanted [Ja'nae] to go," because she
"was scared to go alone."  Testimony of Ja'nae Foster, Trial Transcript, August 5, 2009, Exhibit 18,
p. 112 (ECF No. 17-1, p. 113).

    Two witnesses, who lived with Wilson at the time, corroborated the victims' testimony,
testifying that they saw Wilson touch them inappropriately.  Roberta Foster testified as follows:

> Q.    Did you see him do anything to [CS]?
>
> A.    Yes, I did.
>
> Q.    What did you see him do to [CS]?
>
> A.    He touched her breasts, tried to get his hands down the top of her shirt.
> I mean touching her breasts through her shirt.  And then he tried putting his hand
> down there.  He'd run his hands up the top of her -- her shorts, run his hand up, and
> he would reach over and like, you know, go like this, kind of like that on the side of
> her breasts.
>
> Q.    And, I'm sorry, for the record because we are tape recorded in here,
> when you said that he put his hands on her breasts and then down her shirt like this,
> were your hands in the areas of the clavicle?  So under her shoulder, but above her
> actual breast in the front --
>
> A.    Yes.
>
> Q.    -- of her chest?
>
> A.    Yes, that's where he -- yeah.
>
> Q.    Okay.  And you're doing that again with your hand just --
>
> A.    Right.
>
> Q.    -- for the record.  And then when you were doing the pinching motion
> and describing that his hands were on the side of her breasts, that's on the side of her
> body, under her armpit, but above her waist; is that correct?

1        A.    Yes, on the side of the breast, you know, there.  The -- the -- you know
    where it's heavier, you know --

2

         Q.    Okay.  Did you see him do anything to [AS]?

3

         A.    Yes.

4

         Q.    What did you see him do?

5

         A.    Even though she wasn't developed, he put his hands -- he took both of

6    his hands down her shirt, and then would like slap where they should be.

7        Q.    Okay.  And you're -- with your hands, you're showing the front --

8        A.    On the breasts.

9        Q.    -- of your body where the breasts --

10       A.    Right.

11       Q.    -- would be?

12       A.    Would be, right.

13

14   Testimony of Roberta Foster, Trial Transcript, August 5, 2009, Exhibit 18, pp. 78-79 (ECF No. 17-1,

15   pp. 79-80); *see also id*. at 86-87 (ECF No. 17-1, pp. 87-88) (regarding her reaction to what she

16   observed).  Ja'nae Foster testified as follows:

17       Q.    Was there a time that you ever saw the defendant do anything to [CS]?

18       A.    There was a couple of times, yes.

19       Q.    What did you see him do?

20       A.    The one time I went to walk out, and his hands were up on the chest
     area, and then when I walked out they were gone.  And I asked him about it, and he

21   said it was none of my -- I really don't like using this language or anything.

22       Q.    What word did he use?

23       A.    He said it was none of my fucking business, and he walked into the

24   garage.

         Q.    Okay.  What else did you say?

25

         A.    I just walked over to [CS] and she started talking to me and everything,

26   and then she started crying.

                                          10

1        Q.     Okay.  Did you see him touch [CS] another time?

2        A.     Well, he would try to like -- he would mess with their legs and stuff, and it was kind of like underneath their shorts at the bottom of where the shorts would

3   come down around the legs.

4        Q.     Both [CS] and [AS]?

5        A.     Yes.

6        Q.     Did you ever see him rub [CS]'s or [AS]'s back?

7        A.     Yes.

8 Testimony of Ja'nae Foster, Trial Transcript, August 5, 2009, Exhibit 18, pp. 112-13 (ECF No. 17-1,

9 pp. 113-14).

10      AS and CS testified that Wilson showed them pornography.  AS testified as follows:

11        Q.     What did he show you?

12        A.     He showed me a phone.

13                  *   *   *

14        Q.     What kind of phone did he show you?

15        A.     He showed me -- well, I don' remember what kind of phone it was.

16        Q.     Okay.  Was it the kind of phone that is like in the house and attached

17  to a wall or something or a cell phone kind of phone?

18        A.     A cell phone.

19        Q.     Okay.  And when he showed it to you, what did you see on it?

20        A.     Well, I seen kissing and girls private areas.  I seen girls -- well, a boy's twinkie in a girl's mouth, and I seen naked girls and boys.

21                  *   *   *

22        A.     ... Because all I remember was when he showed me the phone at night time and he said when you grow up, S-E-X is going to feel so good.

23

24        Q.     What did he tell you?  When you grow up what?  I'm sorry.  I didn't hear that.

25        A.     S-E-X is going to feel so good.

26

1    Testimony of AS, Trial Transcript, August 4, 2009, Exhibit 17, pp. 60-61 (ECF No. 17, pp. 61-62).

2    CS testified as follows:

3           Q.     ... Did you see anything else in the garage that was maybe a little
       unusual?
4
            A.     There was pictures of naked women on the walls.
5
            Q.     Okay.  Why would you be in the garage?
6
            A.     Because he would bring me in there to show me stuff or I would go
7      ask him for something.

8           Q.     When you say he would bring you in there to show you stuff, what
       would he show you?
9
            A.     Pictures.
10
            Q.     What kind of pictures?
11
            A.     Nude pictures.
12
            Q.     When he showed you nude pictures, how did he show them to you?
13     Like what were they in or on?

14          A.     They were on a wall, a phone, and yeah.

15          Q.     When you say on the wall, do you mean just naked pictures kind of
       pinned up to the wall?
16
            A.     Yes.
17
            Q.     When you say on the phone, tell me what you mean by that.
18
            A.     He had a phone that had -- that had some pictures on there.
19
                                    *     *     *
20
            Q.     Okay.  And when -- what kind of pictures?
21
            A.     There were naked women and sometimes -- and I -- I remember there
22     being a naked man on there too.  There was a couple of pictures like that on there.

23          Q.     Did he show you the phone one time or more than one time?

24          A.     More than one time.

25          Q.     Were there times that he would show you the phone and he would
       touch you also?
26

1          A.     Yes.

2          Q.     And where did that happen?

3          A.     In the garage.  He would sometimes put his arm around me and he
would like rub on my shoulders.

4          Q.     How would he rub on your shoulders?

5          A.     He like -- you know how a therapist would rub on your shoulders, or a
6    -- or a masseuse.

7          Q.     Did that happen in the garage?

8          A.     Yes.

9          Q.     What position would you be in?

10         A.     I would be standing in front, he would be on the side with his arm
around me.

11         Q.     Okay.  When he rubbed your shoulders lie that and showed you
12   pictures, how did you feel?

13         A.     I felt uncomfortable.

14   Testimony of CS, Trial Transcript, August 4, 2009, Exhibit 17, pp. 123-25 (ECF No. 17, pp.

15   124-26); *see also id*. at 127, 137-40 (ECF No. 17, pp. 128, 138-41).  Tonja Tennant and Roberta

16   Foster corroborated the girls' testimony that there was pornography on the wall in the garage.  *See*

17   Testimony of Tonja Tennant, Trial Transcript, August 5, 2009, Exhibit 18, pp. 67-68 (ECF No. 17-1,

18   pp. 68-69); Testimony of Roberta Foster, Trial Transcript, August 5, 2009, Exhibit 18, pp. 75-76, 81-

19   82 (ECF No. 17-1, pp. 76-77, 82-83).  Also, Ja'nae Foster testified that she saw pornography both on

20   the wall in the garage and on Wilson's telephone.  Testimony of Ja'nae Foster, Trial Transcript,

21   August 5, 2009, Exhibit 18, pp. 113-15, 121-22 (ECF No. 17-1, pp. 114-16, 122-23).

22         Furthermore, CS and AS both testified that Wilson threatened to hurt their mother if they told

23   anyone about what he was doing to them.  AS testified as follows:

24         Q.     Did he ever say anything to you about him touching you about whether
or not you should tell anyone?

25         A.     He said if you ever touch -- sorry.  If you ever tell anyone, I'm going to
26   hurt your mom.

13

1          Q.     How did that make you feel?

2          A.     It made me feel really mad inside.  It made me -- I wouldn't tell no one

3    in the world.

4    Testimony of AS, Trial Transcript, August 4, 2009, Exhibit 17, p. 62 (ECF No. 17, p. 63).

5    CS testified as follows:

6          Q.     Did he ever say anything to you about talking about what he was

7    doing?

8          A.     He said that if I would tell anybody that he would hurt my mom and
the person that she was going out with, Greg, and my family.

9          Q.     When he told you that, did you believe him?

10        A.     Yes.

11        Q.     How did that make you feel?

12        A.     I felt scared.

13    Testimony of CS, Trial Transcript, August 4, 2009, Exhibit 17, p. 131 (ECF No. 17, p. 132); *see also*

14    *id*. at 132-33, 154-55 (CS testified that she felt Wilson looked at her so as to intimidate her when she

15    testified at preliminary hearing).

16        In light of the testimony of AS and CS regarding the manner in which Wilson touched them,

17    their testimony about how Wilson touching them made them feel, their testimony that Wilson

18    showed them pornography, AS' testimony about Wilson talking to her about how sex would feel

19    when she grew up, the testimony of AS and CS about Wilson's threats regarding what he would do if

20    they told anyone about what he was doing to them, and the corroborating testimony of Tonja

21    Tennant, Roberta Foster, and Ja'nae Foster, all viewed in the light most favorable to the prosecution,

22    this court determines that there was, without question, sufficient evidence presented at trial to

23    support Wilson's convictions.

24        The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable

25    application of, *Jackson*, or any other Supreme Court precedent.  The court will, therefore, deny

26    Wilson habeas corpus relief with respect to Claim 1a.

1      Claim 2

2          In Claim 2, Wilson claims that his sentence "violated the Double Jeopardy Clause of the

3  Fifth Amendment and the presumption against the pyramiding of punishment for a single transaction

4  and occurrence."  First Amended Petition, p. 20.

5          Wilson asserted this claim on his direct appeal (*see* Appellant's Opening Brief, Exhibit 29,

6  pp. 24-29 (ECF No. 18-7, pp. 35-40)), and the Nevada Supreme Court denied relief on the claim

7  without discussion.  *See* Order of Affirmance, Exhibit 33, p. 1, footnote 1 (ECF No. 18-11, p. 2).

8          When the state court has denied a federal constitutional claim on the merits without

9  explanation, the federal habeas court "must determine what arguments or theories supported or ...

10 could have supported, the state court's decision; and then it must ask whether it is possible

11 fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in

12 a prior decision of [the United States Supreme Court]."  *Harrington*, 562 U.S. at 102.

13         In *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the Supreme Court established a

14 test for determining whether or not two convictions are punishments for the same crime for purposes

15 of the Double Jeopardy Clause; the question under *Blockburger* is whether each offense contains an

16 element that the other does not.  The Supreme Court has further held, however, that "[w]ith respect

17 to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than

18 prevent the sentencing court from prescribing greater punishment than the legislature intended."

19 *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *see also Jones v. Thomas*, 491 U.S. 376, 381 (1989)

20 (Double Jeopardy Clause protects against multiple punishments for the "same offense" in a single

21 proceeding where a state legislature does not intend to allow punishment for both offenses).

22 Therefore, legislative intent is a key to determining whether multiple charges and punishments

23 violate the Double Jeopardy Clause.  *See Hunter*, 459 U.S. at 368-69.  There is no violation where

24 the legislature intends to impose multiple punishments.  *Id*.

25         The Nevada Supreme Court's denial of relief on this claim was not an unreasonable

26 application of *Blockburger* and *Hunter*.

15

1    The lewdness charges upon which Wilson was convicted involved his touching of CS and AS

2    on different parts of their bodies; each of those charges was, by definition, for a separate act.

3    As between the lewdness convictions and the conviction for unlawful contact with a child,

4    those crimes involve completely different elements.  Under NRS 201.230, the crime of lewdness

5    with a child under the age of fourteen has the following elements: (1) a lewd or lascivious act;

6    (2) upon or with the child's body or any part of the child's body; (3) the child being under the age of

7    fourteen; and (4) intent to arouse, appeal to, or gratify, the lust or passion of the accused or the child.

8    *See* Order of Affirmance, Exhibit 33, pp. 3-5 (ECF No 18-11, pp. 3-6).  And, under NRS 207.260(1),

9    the crime of unlawful contact with a child under 16 is committed when "[a] person ... without lawful

10   authority, willfully and maliciously engages in a course of conduct with a child who is under 16

11   years of age and who is at least 5 years younger than the person which would cause a reasonable

12   child of like age to feel terrorized, frightened, intimidated or harassed, and which actually causes the

13   child to feel terrorized, frightened, intimidated or harassed...."  NRS 207.260(1).  These are two very

14   different crimes.  Lewdness with a child is committed by a single lewd act with a particular intent;

15   the crime of unlawful contact with a child is committed by a course of conduct with a particular

16   impact on a child.  There is no showing that the Nevada legislature intended that one convicted of

17   lewdness with a child could not also be convicted of unlawful contact with a child.

18   The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable

19   application of, *Blockburger*, *Hunter*, or any other Supreme Court precedent.  The court will deny

20   Wilson habeas corpus relief with respect to Claim 2.

21   Claim 4

22   In Claim 4, Wilson claims that his federal constitutional rights were violated because of

23   prosecutorial misconduct during closing arguments.  First Amended Petition, pp. 25-28.

24   Wilson asserted this claim on his direct appeal (*see* Appellant's Opening Brief, Exhibit 29,

25   pp. 40-42 (ECF No. 18-7, pp. 51-53)), and the Nevada Supreme Court denied relief on the claim

26   without discussion.  *See* Order of Affirmance, Exhibit 33, p. 1, footnote 1 (ECF No. 18-11, p. 2).

16

1    Wilson also asserted this claim in his state habeas action.  *See* Petition for Writ of Habeas

2    Corpus (Post-Conviction), Exhibit 39, pp. 16-22 (ECF No. 9-3, pp. 18-24).  The state district court

3    ruled as follows:

4         The Supreme Court of Nevada summarily rejected Defendant's claims of
          prosecutorial misconduct on appeal, finding them to be without merit.  Order of
5         Affirmance, December 9, 2011, p. 1, n.1.  That ruling is the law of the case and
          precludes review of Defendant's claims here.
6

7    Findings of Fact, Conclusions of Law and Order, Exhibit 44, p. 4 (ECF No. 19-8, p. 6).  In the

8    Nevada Supreme Court's ruling on the appeal in Wilson's state habeas action, the court did not

9    address this claim.

10    "Improper argument does not, per se, violate a defendant's constitutional rights."  *Jeffries v.*

11    *Blodgett*, 5 F.3d 1180, 1191 (9th Cir. 1993).  It "is not enough that the prosecutors' remarks were

12   undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

13   Rather, a defendant's constitutional right to due process of law is violated only if the prosecutor's

14   misconduct renders a trial "fundamentally unfair."  *Id.*; *see also Smith v. Phillips*, 455 U.S. 209, 219

15   (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the

16   fairness of the trial, not the culpability of the prosecutor").  Claims of prosecutorial misconduct are

17   reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's

18   [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due

19   process.'"  *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted); *see also Greer v.*

20   *Miller*, 483 U.S. 756, 765 (1987); *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002).  In

21   *Darden*, the Supreme Court "measured the fairness of the petitioner's trial by considering,

22   *inter alia*, (1) whether the prosecutor's comments manipulated or misstated the evidence;

23   (2) whether the trial court gave a curative instruction; and (3) the weight of the evidence against the

24   accused."  *Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005) (citing *Darden*, 477 U.S. at 181-82).

25   If there is constitutional error resulting from prosecutorial misconduct, a harmless error analysis is

26   applied: the error warrants relief if it "had substantial and injurious effect or influence in determining

the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012).

Wilson claims, first, that the prosecutor improperly vouched for witnesses in her closing argument. *See* First Amended Petition, pp. 25-26.  In this regard, Wilson points to the following arguments made by the prosecutor:

> What you heard was two young girls who have absolutely nothing to gain here.  Think about that.  You know, people -- you see stuff on TV about custody battles and, you know, mom puts kiddo up to saying dad touched me so that mom can get custody away from dad, or dad puts kiddo up to saying mom's boyfriend touched her because dad is mad that mom's got a new boyfriend.  You don't have any of that here.
>
> These children have absolutely no reason to make anything like this up, none whatsoever.  What do they have to gain by this?  Nothing.  But what happens instead is, first, they have to tell the detective what happened. [AS] has to go and be examined.  Imagine, if you will, being 10 years old and having to lay on a table in the hospital with nothing on below the waist and show your genital area to a strange doctor.  It's bad enough when you're an adult having to do that, but as a child?
>
> So [AS] has to also talk to the detective, go through the exam.  And then they come to a preliminary hearing where they testify and tell a judge what the defendant has done to them.  And what happens, he stares them down, makes faces, they're scared, they can barely talk.
>
> So how are they rewarded by coming in and -- and telling what somebody did?  They have to come back and testify in front of a grand jury.  And then they come back here and are examined and cross-examined.  That's what these girls have to gain by telling somebody that he touched them.  They have absolutely nothing to gain and they have no reason to lie.
>
> So you have girls with pure motive, who all they want is to have it stop.  And it did.  Here we are.  You've heard all the evidence.  You've heard the testimony.  And it is up to you.  The instructions tell you that you must be convinced beyond a reasonable doubt that the defendant touched these girls.  Their evidence, their testimony was clear.  They weren't embellishing.
>
> You heard them say in the beginning, the defense, every time they tell their story it gets bigger, they embellish more and more.  In fact, the contrary is true.  They're not embellishing any.  They're trying to remember as best they can.  But when you go through a bad experience like that, you're not sitting there going home and writing down all the details so that you could recount it two years later to a jury.  They told you as best they could.

*   *   *

1
2
3

> A bath, bathing a child who can't bathe herself, not a bad touch of course. But with the pornography on the walls, on the phone, no legitimate reason to touch, no reason for the kids to make it up, all of that adding up together shows that, yes, it was inappropriate touching.

4   Trial Transcript, August 5, 2009, Exhibit 18, pp. 129-31, 146 (ECF No. 17-1, pp. 130-32, 147); *see*

5   *also* First Amended Petition, p. 26.

6       As a general rule, "a prosecutor may not express his opinion of the defendant's guilt or his

7   belief in the credibility of [government] witnesses." *United States v. McKoy*, 771 F.2d 1207, 1211

8   (9th Cir. 1985). Improper vouching for the credibility of a witness occurs when the prosecutor

9   places the prestige of the government behind the witness or suggests that information not presented

10  to the jury supports the witness's testimony. *United States v. Young*, 470 U.S. 1, 7 n.3, 11-12 (1985).

11  Here, the prosecutor argued that AS and CS were believable witnesses. Her argument was based on

12  the circumstances as revealed by the evidence; she sought to show that, under the circumstances, AS

13  and CS had no reason to lie. The prosecutor did not state her argument in this regard as a matter of

14  personal opinion, and did not suggest that there were facts beyond the jury's knowledge that

15  supported the testimony of AS and CS. This argument was not improper vouching.

16      Wilson also claims the following argument by the prosecutor was improper:

17
18
19

> The pictures in the garage. There was pornography that Bobby saw, that Ja'nae saw, that the girls saw. Did the detective see it? No. Why? The defendant was packing. You heard there were boxes everywhere. He had pulled it off the walls. Does that mean the girls didn't see it, that it wasn't there because the detective didn't see it? Of course not. The defendant pulled it down.

20  Trial Transcript, August 5, 2009, Exhibit 18, p. 148 (ECF No. 17-1, p. 149); *see also* First Amended

21  Petition, pp. 26, 27-28. Wilson claims that this was improper vouching, and that it suggested the

22  prosecutor had knowledge of facts not in evidence. This, however, was acceptable argument, based

23  on evidence presented at the trial. There was no suggestion that the prosecutor had information not

24  available to the jury, and the prosecutor did not make the argument in terms of her personal opinion.

25  The prosecutor based this argument on evidence -- the evidence that there were boxes in the garage,

26

indicating that Wilson had been packing his belongs -- and properly argued that the jury should infer

that Wilson had removed the pictures from the walls before the detective saw the garage.

Wilson also claims that the prosecutor "usurped the function of the jury" by referring to

Wilson as guilty; he complains, in this regard, of the following arguments of the prosecutor:

> You have the unique opportunity of hearing from children telling you about how he was touching them and touching them inappropriately, but you have somebody, not only one person, two different people who saw it and corroborated it. That does not happen often.  So the lewdness counts have also been proven.

*   *   *

> He's guilty of touching these girls.

*   *   *

> He's guilty of these counts.  Find him guilty.  Thank you.

Trial Transcript, August 5, 2009, Exhibit 18, pp. 128, 131, 150 (ECF No. 17-1, pp. 129, 132, 151);

*see also* First Amended Petition, p. 26.  This was not improper argument by the prosecutor.  The

prosecutor was simply arguing, properly, based on the evidence at trial, that Wilson was guilty.

Next, Wilson claims that the prosecutor misstated the law in the following arguments:

> In certain circumstances, when you look at everything, the pornography on the wall, on the phone, all of those things combined is what makes that a lewd act.  I'm sure the defense is going to come up here and talk to you about, well, there's no evidence that he intended to gratify his lust, passions, or sexual desires.  Well, you know, think about it.

*   *   *

> A bath, bathing a child who can't bathe herself, not a bad touch of course.  But with the pornography on the walls, on the phone, no legitimate reason to touch, no reason for the kids to make it up, all of that adding up together shows that, yes, it was inappropriate touching.

Trial Transcript, August 5, 2009, Exhibit 18, pp. 127, 146 (ECF No. 17-1, pp. 128, 147); *see*

*also* First Amended Petition, pp. 26-27.  In these arguments, however, the prosecutor was addressing

the mens rea element of the lewdness charges -- that the defendant acted with the intent to arouse,

appeal to, or gratify, the lust or passion of himself or the child.  *See* NRS 201.230.  The evidence the

1   prosecutor referred to was plainly relevant to that element of the crime.  The argument was not

2   improper.

3          Wilson claims, similarly, that the following argument of the prosecutor misstated the law

4   regarding the crime of lewdness with a child:

5          You know what, when you touch a 10 year old child inappropriately and she
           recognizes and she feels uncomfortable, then that's a bad touch.

6

7   Trial Transcript, August 5, 2009, Exhibit 18, p. 127 (ECF No. 17-1, p. 128); *see also* First Amended

8   Petition, p. 27.  This, too, was acceptable argument.  The child's feelings regarding the touch, and

9   reaction to it, were relevant to the questions whether the touches were lewd or lascivious, and

10  whether they were committed with intent to arouse, appeal to, or gratify, the lust or passion of the

11  accused or the child.  *See* NRS 201.230.

12         Next, Wilson claims that the prosecutor improperly attempted to inflame the passions of the

13  jury by characterizing as "pornography," and as "dirty pictures," pictures that were evidently on the

14  wall in Wilson's garage.  For example, the prosecutor argued:

15         But you've got to think about the whole picture of what you heard about how
           he would bring [CS] into the garage where, what's in there?  The pornography on the
16         walls, dirty pictures.  You heard that from [CS], you heard that from [AS], you heard
           it from Bobby and Tonja -- well, maybe not Tonja -- and Ja'nae about the
17         pornography on the walls.  He would bring her into the garage.  He would touch her.
           She felt uncomfortable.

18

19  Trial Transcript, August 5, 2009, Exhibit 18, p. 127 (ECF No. 17-1, p. 128); *see also* First Amended

20  Petition, p. 27.  This was not unduly inflammatory.  It was a fair characterization of the evidence.

21  *See* Testimony of CS, Trial Transcript, August 4, 2009, Exhibit 17, pp. 123-25 (ECF No. 17, pp.

22  124-26) ("pictures of naked women on the walls," "nude pictures"); Testimony of Tonja Tennant,

23  Trial Transcript, August 5, 2009, Exhibit 18, pp. 67-68 (ECF No. 17-1, pp. 68-69) ("Pornography,"

24  "Naked women, women in lingerie"); Testimony of Roberta Foster, Trial Transcript, August 5, 2009,

25  Exhibit 18, pp. 75-76 (ECF No. 17-1, pp. 76-77) ("Pornography pictures," "naked women and naked

26  women and men together, you know, together, you know, men with women in the pictures");

Testimony of Ja'nae Foster, Trial Transcript, August 5, 2009, Exhibit 18, pp. 113-15 (ECF No. 17-1, pp. 114-16) ("pornography things," "really gross stuff," "they didn't have really anything on or anything," "Mostly the chest area, but there were some that you could see the [genital area]").

Finally, Wilson asserts that the prosecutor referred to facts not in evidence when she argued that Wilson touched CS's breast. *See* First Amended Petition, p. 28. There was, however, evidence from which the jury could reasonably have concluded that Wilson touched CS's breast. *See* Testimony of CS, Trial Transcript, August 4, 2009, Exhibit 17, pp. 126-31 (ECF No. 17, pp. 127-32). This was not improper argument.

In short, this court finds that Wilson has not identified any improper argument on the part of the prosecutor, and certainly none that could have so infected Wilson's trial with unfairness as to make the resulting convictions a denial of due process. The Nevada Supreme Court's summary rejection of this claim was not contrary to, or an unreasonable application of Supreme Court precedent. The court will deny Wilson habeas corpus relief with respect to Claim 4.

Claim 5a

In Claim 5a, Wilson claims that his trial counsel was ineffective, in violation of his federal constitutional rights, with respect to her cross-examination of CS. First Amended Petition, pp. 29-30.

Wilson asserted this claim in his state habeas action. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 39, pp. 9-13 (ECF No. 9-3, pp. 11-15). The state district court ruled as follows:

> Trial counsel was not ineffective in the cross-examination of [CS]. How to cross examine a witness is a strategic decision for counsel to make. Furthermore, Defendant cannot demonstrate that, but for counsel's errors, there is a reasonable probability that the outcome would have been different. Thus, Defendant's petition as to this ground is denied.

Findings of Fact, Conclusions of Law and Order, Exhibit 44, p. 4 (ECF No. 19-8, p. 6). On the appeal in Wilson's state habeas action, the Nevada Supreme Court ruled as follows regarding this claim:

22

1   [A]ppellant claimed that trial counsel's cross-examination of the victim C.S.
2   constituted ineffective assistance of counsel. Specifically, appellant claimed that trial
    counsel asking the victim about other incidences of touching was inappropriate cross-
3   examination. Appellant failed to demonstrate that trial counsel was deficient. Trial
    counsel asked about these other incidents in order to demonstrate and later argue that
4   the victim changed her story often. The other incidents were incidents that the victim
    told to the police and the grand jury but denied at trial. In addition, the victim added
5   an incident to the story at trial that she had never told anyone before. Therefore, this
    was a tactical decision to undermine the testimony of the victim and is virtually
6   unchallengeable absent extraordinary circumstances, *Ford v. State*, 105 Nev. 850,
    853, 784 P.2d 951, 953 (1989), which appellant failed to demonstrate. Therefore, the
    district court did not err in denying this claim.

8   Order of Affirmance, Exhibit 48, pp. 4-5 (ECF No. 19-12, pp. 5-6).

9   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two

10  prong test for analysis of claims of ineffective assistance of counsel: the petitioner must demonstrate

11  (1) that the defense attorney's representation "fell below an objective standard of reasonableness,"

12  and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a

13  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

14  would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of

15  ineffective assistance of counsel must apply a "strong presumption" that counsel's representation

16  was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's

17  burden is to show "that counsel made errors so serious that counsel was not functioning as the

18  'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. And, to establish

19  prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had

20  some conceivable effect on the outcome of the proceeding." *Id* at 693. Rather, the errors must be

21  "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

22  Where a state court has adjudicated a claim of ineffective assistance of counsel, under

23  *Strickland*, establishing that the decision was unreasonable under AEDPA is especially difficult.

24  *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court instructed:

25  The standards created by *Strickland* and § 2254(d) are both highly deferential,
    [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct.
26  2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly"
    so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a

23

1
2
3
4

> general one, so the range of reasonable applications is substantial.  556 U.S., at 123, 129 S.Ct. at 1420.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

5
6

*Richter*, 562 U.S. at 105; *see also Cheney*, 614 F.3d at 994-95 (acknowledging double deference required to state court adjudications of *Strickland* claims).

7
8
9
10
11
12
13

   This court agrees with the analysis of the Nevada Supreme Court.  Counsel's cross-examination of CS regarding allegations of touching by Wilson that she had made before, but not at trial, was plainly calculated to show that her story was not consistent.  In this court's view, examining the record of the trial, it appears that this approach -- attempting to undermine the credibility of the two child victims -- was likely the only viable defense strategy available to counsel.  Whether or not that strategy ultimately succeeded, counsel's performance, in choosing to pursue that strategy, certainly was not unreasonable.

14
15
16
17
18
19
20
21
22

   Also, Wilson claims that his counsel was ineffective for cross-examining CS about the pornography that she testified she saw on the wall in the garage.  *See* First Amended Petition, p. 29.  Wilson asserts that "the pornography on Wilson's garage wall and cell phone are not elements of the crimes Wilson was charged with," and, therefore, counsel should not have highlighted those allegations.  *See id*.  This argument is meritless.  The testimony of CS about Wilson showing her pornography was plainly relevant to the question of Wilson's intent in touching CS and AS as he did, and it was also relevant to the course of conduct that Wilson engaged in, and its effect on CS and AS, with regard to the charge of unlawful contact with a child.  Wilson's counsel was not ineffective for cross-examining CS about the pornography she saw in the garage.

23
24
25

   The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*, or any other Supreme Court precedent.  The court will deny Wilson habeas corpus relief with respect to Claim 5a.

26

Claim 5b

In Claim 5b, Wilson claims that his trial counsel was ineffective, in violation of his federal constitutional rights, because she "failed to seek dismissal of all charges because Wilson did not "willfully and lewdly commit any lewd or lascivious act" pursuant to Nevada Revised Statute § 201.230." First Amended Petition, p. 30.

Wilson asserted this claim in his state habeas action. *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 39, pp. 2-3, 13-15 (ECF No. 19-3, pp. 4-5, 15-17). The state district court ruled as follows:

> Counsel was not ineffective for declining to move to dismiss the charges on the grounds Defendant's acts were not "willful." The question of Defendant's intent was a jury issue that was resolved against Defendant. Thus, any motion to dismiss the charges on the grounds Defendant's acts were not "willful" would have been futile and defense counsel was not ineffective in deciding not to file such. Defendant's claim is hereby denied.
>
> *   *   *
>
> To the extent Defendant complains that his acts with the victims were "playful" and not of a criminal nature, this was a matter for the jury to decide and the jury rejected Defendant's claim. The Nevada Supreme Court upheld the sufficiency of the evidence on appeal, thus, that ruling is the law of the case and precludes further review.

Findings of Fact, Conclusions of Law and Order, Exhibit 44, pp. 4-5 (ECF No. 19-8, pp. 6-7). On the appeal in Wilson's state habeas action, the Nevada Supreme Court ruled as follows regarding this claim:

> [A]ppellant claimed that trial counsel was ineffective for failing to seek dismissal of all of the charges because appellant did not willfully and lewdly commit any lewd or lascivious act. Appellant failed to demonstrate that trial counsel was deficient or that he was prejudiced. On appeal, appellant argued that the touching that occurred in this case did not constitute a lewd or lascivious act. *See Wilson v. State*, Docket No. 54814 (Order of Affirmance, December 9, 2011). To the extent that appellant is claiming that trial counsel did not seek dismissal on this basis or did not raise this argument on appeal, this claim is belied by the record. To the extent that appellant claims that trial counsel should have sought dismissal because he did not willfully and lewdly commit the act, appellant failed to demonstrate that this argument would have been successful because this court already determined that the acts were lewd and that he had the intent to commit the acts. *See id*. Therefore, the district court did not err in denying this claim.

25

1    Order of Affirmance, Exhibit 48, p. 5 (ECF No. 19-12, p. 6).

2        This claim fails because, as is discussed above with regard to Claim 1, there was ample

3    evidence presented at trial to support Wilson's convictions for lewdness with a child.  A motion to

4    dismiss those charges would have been unsuccessful, and Wilson's counsel was not ineffective for

5    not making such a motion.

6        The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

7    unreasonable application of, *Strickland*, or any other Supreme Court precedent.  The court will deny

8    Wilson habeas corpus relief with respect to Claim 5b.

9        Claim 5c

10       In Claim 5c, Wilson claims that his trial counsel was ineffective, in violation of his federal

11   constitutional rights, because she "failed to object to multiple instances of prosecutorial misconduct

12   during closing arguments."  First Amended Petition, pp. 30-31.

13       Wilson asserted this claim in his state habeas action.  *See* Petition for Writ of Habeas Corpus

14   (Post-Conviction), Exhibit 39, p. 16 (ECF No. 19-3, p. 18).  The state district court ruled as follows:

15           Trial counsel was not ineffective for not objecting to alleged prosecutorial
         misconduct.  The Supreme Court of Nevada summarily rejected Defendant's claims
16       of prosecutorial misconduct on appeal.  Order of Affirmance, December 9, 2011, p. 1,
         n.1.  Thus, any objections to alleged misconduct would have been futile.
17       Additionally, whether to object to alleged prosecutorial misconduct during closing
         arguments is a virtually unchallengeable strategic decision of counsel.  Finally,
18       Defendant cannot show that, but for counsel's alleged error in failing to object, there
         is a reasonable probability that the result of his trial would have been different.  Thus,
19       Defendant's petition as to this ground is denied.

20   Findings of Fact, Conclusions of Law and Order, Exhibit 44, p. 4 (ECF No. 19-8, p. 6).  On the

21   appeal in Wilson's state habeas action, the Nevada Supreme Court ruled as follows regarding this

22   claim:

23           [A]ppellant claimed that trial counsel was ineffective for failing to object to
         several instances of prosecutorial misconduct during closing arguments.  Specifically,
24       he claimed that the State improperly vouched for the witnesses, improperly referenced
         appellant's guilt, misrepresented the law, inflamed the jury, and argued facts not in
25       evidence.  Appellant failed to demonstrate that trial counsel was deficient or that he
         was prejudiced because appellant failed to demonstrate that these were misconduct
26       that trial counsel should have objected to, *see Epps v. State*, 901 F.2d 1481 (8th Cir.
         1990) (explaining that prosecutor's comments that were not objectionable could not

                                        26

1     be a basis for an ineffective-assistance claim based on counsel's failure to object);
      *Broussard v. Lockhart*, 32 F.3d 322, 324 (8th Cir. 1994) (observing that decision
2     whether to object is a strategic one and "must take into account that the court will
      overrule it and that the objection will either antagonize the jury or underscore the
3     prosecutor's words in their minds"), or that had trial counsel objected, the objection
      would have resulted in a different outcome at trial.  The record demonstrates that the
4     State was simply pointing out the lack of motive for the victims to fabricate, which
      did not rise to vouching, *see Browning v. State*, 120 Nev. 347, 359, 91 P.3d 39, 48
5     (2004), the statements were reasonable inferences based on the evidence and were
      proper argument to the jury, and the discussion of the pornography was proper as
6     testimony regarding those pictures was in evidence.  Therefore, the district court did
      not err in denying this claim.

7

8     Order of Affirmance, Exhibit 48, pp. 5-6 (ECF No. 19-12, pp. 6-7).

9         This claim of ineffective assistance of counsel is without merit because, as is discussed above

10    with regard to Claim 4, Wilson points to no objectionable arguments made by the prosecution.

11    Wilson's counsel was not ineffective for refraining from asserting meritless objections.

12        The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

13    unreasonable application of, *Strickland*, or any other Supreme Court precedent.  The court will deny

14    Wilson habeas corpus relief with respect to Claim 5c.

15    <u>Claim 6a</u>

16        In Claim 6a, Wilson claims that his appellate counsel was ineffective, in violation of his

17    federal constitutional rights, because he "failed to include in Wilson's direct appeal the fact that the

18    State of Nevada did not prove [with respect to] each element of the crime of lewdness with a minor

19    that Wilson "willfully and lewdly committed a lewd or lascivious act."  First Amended Petition,

20    p. 31.

21        Wilson asserted this claim in his state habeas action.  *See* Petition for Writ of Habeas Corpus

22    (Post-Conviction), Exhibit 39, pp. 23-24 (ECF No. 19-3, pp. 25-26).  The state district court ruled as

23    follows:

24            Appellate counsel was not ineffective in not raising claims concerning
      Defendant's intent.  What issues to raise on direct appeal is a strategic decision.  The
25    question of Defendant's intent was for the jury and it decided the issue against
      Defendant, which decision was affirmed by the district court in denying Defendant's
26    Motion for Acquittal.  Thus to raise the issue again on direct appeal would have been
      a weaker argument and was appropriately winnowed out.  Furthermore, Defendant

1  cannot show a reasonable probability that the argument would have succeeded if
   raised on direct appeal, and so cannot demonstrate prejudice.
2

3  Findings of Fact, Conclusions of Law and Order, Exhibit 44, p. 5 (ECF No. 19-8, p. 7).  On the

4  appeal in Wilson's state habeas action, the Nevada Supreme Court ruled as follows regarding this

5  claim:

6          [A]ppellant claimed that appellate counsel was ineffective for failing to argue
        that the State failed to prove that appellant willfully and lewdly committed a lewd and
7        lascivious act.  Specifically, he claimed that the victims did not tell him that they did
        not like that type of touch and, therefore, he had no idea that his conduct was
8        inappropriate.  Appellant failed to demonstrate that appellate counsel was deficient or
        that he was prejudiced.  As stated above, this court concluded on appeal that appellant
9        had the intent to, and committed, a lewd and lascivious act.  *Wilson v. State*, Docket
        No. 54814 (Order of Affirmance, December 9, 2011).  Appellant failed to show that
10       the victim's failure to inform him they did not like to be touched would have had a
        reasonable likelihood of success on appeal.  Further, we note that the [victims]
11       testified that they moved away from him when he would touch them and that
        appellant threatened them to keep them quiet.  Therefore, the district court did not err
12       in denying this claim.

13  Order of Affirmance, Exhibit 48, p. 7 (ECF No. 19-12, p. 8).

14         This claim fails because, as is discussed above with regard to Claim 1, there was ample

15  evidence presented at trial to support the jury's findings with respect to all elements of the crimes of

16  lewdness with a child, including the mens rea element.  Wilson's counsel was not ineffective for not

17  making an argument regarding the sufficiency of the evidence in that regard on appeal.

18         The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

19  unreasonable application of, *Strickland*, or any other Supreme Court precedent.  The court will deny

20  Wilson habeas corpus relief with respect to Claim 6a.

21         Claim 6b

22         In Claim 6b, Wilson claims that his appellate counsel was ineffective, in violation of his

23  federal constitutional rights, with respect to his presentation of Wilson's petition for rehearing.  First

24  Amended Petition, pp. 32-33.

25         Wilson asserted this claim in his state habeas action.  *See* Petition for Writ of Habeas Corpus

26  (Post-Conviction), Exhibit 39, pp. 25-26 (ECF No. 19-3, pp. 27-28).  The state district court ruled:

28

1

> Appellate counsel was not ineffective in declining to raise certain issues in the Petition for Rehearing by the Nevada Supreme Court.  What issues to include in a Petition for Rehearing is a strategic decision of appellate counsel.  The claims Defendant alleges should have been included in appellate counsel's Petition for Rehearing were summarily rejected by the Nevada Supreme Court on direct appeal. Order of Affirmance, December 9, 2011, p. 1, n.1. Thus, it was a reasonable decision of appellate counsel to winnow out weaker arguments and exclude them from the Petition for Rehearing.  Further, Defendant cannot show a reasonable probability that the arguments would have succeeded if raised for rehearing, and so cannot demonstrate prejudice.

2

3

4

5

6

7  Findings of Fact, Conclusions of Law and Order, Exhibit 44, p. 5 (ECF No. 19-8, p. 7).  On the

8  appeal in Wilson's state habeas action, the Nevada Supreme Court ruled as follows regarding this

9  claim:

10

> [A]ppellant claimed that appellate counsel was ineffective for failing to reargue the claims summarily denied in the order of affirmance and for failing to argue that appellant did not commit a willful and lewd act.  Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced.  Appellant failed to provide any specific argument as to the summarily denied claims and how rearguing them would be successful on rehearing.  *See* NRAP 40(c)(1); *Hargrave v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984).  Further, as stated above, appellant failed to demonstrate that argument regarding a willful and lewd act would have been successful on rehearing.  *See* NRAP 40(c)(1) and (2).  Therefore, the district court did not err in denying this claim....

11

12

13

14

15

16  Order of Affirmance, Exhibit 48, p. 8 (ECF No. 19-12, p. 9).

17        Here again, with respect to Wilson's argument that there was insufficient evidence at trial to

18  support his convictions for the crimes of lewdness with a child, this claim of ineffective assistance of

19  appellate counsel  fails because, as is discussed above with regard to Claim 1, there was ample

20  evidence presented at trial to support the jury's findings with respect to all the elements of those

21  crimes.  With regard to Wilson's other assertions that his counsel was ineffective concerning the

22  presentation of the petition for rehearing, Wilson's claims are wholly pro forma and unsupported.

23  *See* First Amended Petition, pp. 32-33.  Wilson has not shown that his counsel was ineffective with

24  regard to his presentation of the petition for rehearing in the Nevada Supreme Court.

25

26

1      The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

2  unreasonable application of, *Strickland*, or any other Supreme Court precedent.  The court will deny

3  Wilson habeas corpus relief with respect to Claim 6b.

4  Certificate of Appealability

5      The standard for issuance of a certificate of appealability calls for a "substantial showing of

6  the denial of a constitutional right."  28 U.S.C. §2253(c).  The Supreme Court has interpreted

7  28 U.S.C. §2253(c) as follows:

8      Where a district court has rejected the constitutional claims on the merits, the
        showing required to satisfy § 2253(c) is straightforward:  The petitioner must
9      demonstrate that reasonable jurists would find the district court's assessment of the
        constitutional claims debatable or wrong.

10

11  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79

12  (9th Cir. 2000).  The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*,

13  537 U.S. 322 (2003).  The Court stated in that case:

14      We do not require petitioner to prove, before the issuance of a COA, that some jurists
        would grant the petition for habeas corpus.  Indeed, a claim can be debatable even
15      though every jurist of reason might agree, after the COA has been granted and the
        case has received full consideration, that petitioner will not prevail.  As we stated in
16      *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the
        showing required to satisfy § 2253(c) is straightforward: The petitioner must
17      demonstrate that reasonable jurists would find the district court's assessment of the
        constitutional claims debatable or wrong."

18

19  *Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

20      The court has considered Wilson's claims with respect to whether they satisfy the standard

21  for issuance of a certificate of appealability, and the court determines that none of them do.  The

22  court will deny Wilson a certificate of appealability.

23  ///

24  ///

25  ///

26  ///

1    **IT IS THEREFORE ORDERED** that petitioner's First Amended Petition for Writ of

2    Habeas Corpus (ECF No. 14) is **DENIED**.

3    **IT IS FURTHER ORDERED** that petitioner is denied a certificate of appealability.

4    **IT IS FURTHER ORDERED** that the Clerk of the Court shall **ENTER JUDGMENT**

5    **ACCORDINGLY.**

6

7    Dated this ˍJanuary 4, 2017.

8

9    _____

10    UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26